UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF IDAHO, INC., an Idaho nonprofit corporation, LARRY SHANKS, and TROY MINTON,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF BOISE, an Idaho municipal corporation,<br><br>    Defendant. | Case No. 1:13-CV-00478-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in the above-entitled matter is Plaintiffs' Motion for Preliminary Injunction (Dkt. 4). The parties stipulated to an expedited briefing schedule since the ordinance at issue in this case becomes effective on January 2, 2014. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record

ORDER - 1

before this Court without oral argument.

## BACKGROUND

Plaintiffs American Civil Liberties Union of Idaho, Inc. ("ACLU"), Larry Shanks ("Shanks"), and Troy Minton ("Minton") filed a Complaint and Motion for Preliminary Injunction alleging Defendant City of Boise's ("City") Ordinance NO. ORD-34-13 ("ORD -34-13") is in violation of the United States Constitution, 42 U.S.C. Section 1983 and the Idaho Constitution. Specifically, the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Additionally, Plaintiffs argue the ordinance is unconstitutionally vague.

ORD34-13 was passed by the Boise City Council and approved by the Mayor on September 17, 2013 and becomes effective on January 2, 2014. The City maintains the ordinance does not violate the United States Constitution or the Idaho Constitution and is not vague or overbroad. The City argues the ordinance was passed to expand the City's existing aggressive solicitation ordinance as well as to curb harassing or unsafe panhandling. The City's press release indicates the ordinance came in response to requests from local business owners and residents who have reported an increase in panhandling activities in recent years.

ORD34-13 defines "aggressive manner" solicitation and prohibits the same. Plaintiffs do not challenge this portion of the ordinance. Rather, Plaintiff's challenge ordinance's prohibition of non-aggressive solicitations for donations of money or

property in other public areas. The Plaintiffs claim the ordinance unlawfully restricts their freedom of speech. The City argues the restriction of speech is a proper time, manner and location restriction in order to satisfy a legitimate governmental interests. Further, the City challenges the Plaintiffs' standing to bring this action.

## STANDARD OF REVIEW

To obtain a preliminary injunction, Plaintiffs must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to them in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def Council*, 555 U.S. 7, 20-23 (2008). The Ninth Circuit has held that "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Further, "under *Winter*, plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction." *Id.* at 1131 (emphasis in original).

For First Amendment challenges where the plaintiff makes a colorable First Amendment claim, the burden shifts to the defendant to justify its speech restrictions. *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011).

ORDER - 3

The Court begins with the presumption that the ordinance at issue is Constitutional and will determine if the ordinance can be interpreted to be satisfy the Constitution. "It is a 'well established principle that statutes will be interpreted to avoid constitutional difficulties.'" *Berger v. City of Seattle*, 569 F.3d 1029, 1046 (9th Cir. 2009) (internal citations omitted). *See also, Ctr. For Bio-Ethical Reform, Inc., v. L.A. County Sheriff's Dep't*, 533 FG.3d 780-791-98 (9th Cir. 2008) (construing an ambiguous statute narrowly to avoid First Amendment problems).

## ANALYSIS

**1. Standing**

The burden to establish standing to bring an action lies with the party seeking federal jurisdiction. *Bennett v. Spear*, 520 U.S. 154, 167-68 (1997). Each plaintiff must show "that (1) he or she personally has suffered some actual or threatened injury as a result of the challenged conduct; (2) the injury can be fairly traced to that conduct; and (3) the injury likely will be redressed by a favorable decision from the court. *See Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982). To establish standing in this case, each plaintiff must show that they engage in a "course of conduct arguably affected with a constitutional interest and that there is a credible threat that the provision will be invoked against the plaintiff." *Valle del Sol v. Whiting*, 732 F.3d 1006, 1015 (9th Cir. 2013).

**ORDER - 4**

First, the City challenges the ACLU's standing to bring this action as the scenarios alleged which would make the ACLU's agents in violation of the ordinance are not the type of actions the ordinance is meant to prohibit. The ACLU claims it raises funds for its activities from individuals and that such solicitation of monies may occur at sidewalk cafes or other restricted areas as outlined in ORD 34-13. While it is true City's purpose in passing the ordinance appears to be focused on reducing "panhandling" versus fundraising by non-profit organizations, the wording of the ordinance could arguably be applied to consensual solicitation efforts by non-profit organizations on sidewalks and sidewalk cafes in downtown Boise. The ACLU has standing even if prosecution is only "remotely possible." *Canatella v. State of California*, 304 F.3d 843, 855 (9th Cir. 2002). The Court finds the ACLU has satisfied the requirements for standing in this case based on the affidavits of its agents regarding their solicitation activities in downtown Boise.

Second, the City challenges the standing of Shanks who avers in the Complaint he is a street musician and is learning to play for donations on the sidewalks of Boise. Shanks is concerned any oral request for donations he makes will cause him to violate ORD-34-13. The City responds the ordinance does not prohibit street performances, so Shanks has no standing. The City misses the point, it is not the street performances that create a possible violation, it is the street performer's request for money or donations to support the performance that would potentially be in violation if made orally or possibly even with a sign if the street performer is acting in any manner other than passive. The

Court finds Shanks has satisfied the requirements for standing in this case.

Third, without explanation, the City argues Minton, a Boise resident who solicits donations on the streets and sidewalks of Boise has no standing. The Court finds this argument meritless as Minton admits in his declaration to conducting the type of solicitation specifically prohibited under the ordinance and plans to continue soliciting in the future. Minton clearly has more than a remote possibility of being prosecuted under ORD 34-13 and has standing to bring this action.

For purposes of the motion for preliminary injunction, the Court finds the Plaintiffs have each carried their burden in establishing standing. The Court will now address the requirements for a preliminary injunction.

## 2. Likelihood of Success on the Merits

Plaintiffs bring a facial and overbreadth challenge to the ordinance. This case is not about whether being asked for a donation of money on a sidewalk makes a person feel uncomfortable. This case is about whether under our Constitution a person has a First Amendment right to ask for money in a public forum or whether the government can reasonably restrict such right to achieve appropriate governmental interests. Based on the initial briefing of the parties, this Court must decide whether Plaintiffs and the City have carried their burdens and whether Plaintiffs have a likelihood of success on the merits of their challenges to ORD 34-13.

**ORDER - 6**

ORD 34-13 restricts aggressive solicitation. Sec. 1, B., 1. It also prohibits solicitation while in an open public area while a person is waiting in line to be admitted to a commercial establishment, while on Boise's public transportation systems, in open public areas within twenty (20) feet of an ATM or entrance to a banking establishment, sidewalk café, mobile or street vendor, any entrance or exit from a public toilet facility (including temporary port-a- potties), any bus stop, taxi stand or valet drop off/pickup station or stand, any parking pay box or station. Sec. 1. B., 2 - 6, 10 -11. Solicitation in a public parking garage is prohibited. Sec. 1., B., 11. The ordinance also restricts solicitation speech on any parkway or roadway whenever the person soliciting enters the roadway or would have to accept the money or thing of value and solicitation of pedestrian whenever the pedestrian "is or may" be impeded from or delayed in crossing the roadway. Sec. 1, B., 8 -9. Solicitation on private property (even if open to the public) is prohibited if the property owner/tenant/occupant has informed or posted a sign prohibiting solicitation. Sec. 1., B., 7.

Solicit or solicitation is defined as "to request, ask, or beg, whether by words, bodily gestures, signs, or other means, for an immediate donation of money or other thing of value, including the purchase of an item or service for an amount far exceeding its value, under circumstances where a reasonable person would understand that the purchase is a donation." Sec. 1, A., 7. of ORD 34-13.

ORD34-13 does provide an exception for "passively standing on the public

ORDER - 7

sidewalk or plaza or sitting on a sidewalk bench or plaza bench with a sign or other written indication that one is seeking donations without orally addressing the request to any specific person." Sec. 1, C. Moreover, the ordinance creates a second exception for "lawful exercise of one's constitution right to picket, protest or stand on the sidewalk even when doing so make passage less convenient for others having to walk around the person picking, protesting, or standing." *Id.*

Except for aggressive solicitation which is a misdemeanor for a first offense, the other prohibitions are infractions on the first offense and misdemeanors for subsequent offenses. Therefore, the Court finds it is undisputed that ORD 34-13 criminalizes certain solicitation speech.

The City does not contest that the many of the areas subject to ORD34-13 are places generally publicly owned, free and open to the public and available for public communication. The ordinance defines "open public area," "parkway," "plaza" and "public sidewalk" to include traditional public forums. Sec. 1. A., 2 -5. For purposes of this motion for injunctive relief, the Court will assume the prohibited areas are traditional public forums unless otherwise discussed. *See American Civil Liberties Union of Nevada v. City of Las Vegas*, 333F.3d 1092, 1100 & n.7 (9th Cir. 2003) (collecting cases describing factors in evaluating the nature of a forum).

"The protections afforded by the First Amendment are nowhere stronger than in the streets and parks both categorized for First Amendment purposes as traditional public

fora." *Berger v. City of Seattle*, 569 F.3d 1029, 1036 (9th Cir. 2009) (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). However, certain restrictions on speech in public fora are valid and a municipality may issue reasonable regulations governing the time, place or manner of speech. *See Grossman v. City of Portland*, 33 F.3d 1200, 1205 (9th Cir. 1994). To satisfy the Constitution, any time, place or manner restrictions must meet three criteria: (1) it must be content-neutral; (2) it must be "narrowly tailored to serve an significant governmental interest"; and (3) it must "leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). If a regulation is not content neutral, which is to say it is content based, then the regulation must withstand a strict scrutiny review which means the City must show its ordinance is the least restrictive means of furthering a compelling government interest and that the ordinance is actually necessary to achieve that interest. *See United States v. Alvarez*, __ U.S. __, 132 S.C. 2537, 2544 and 2549 (2012). "A content based regulation, on the other hand, is "presumptively unconstitutional," . . . and subject to strict scrutiny." *American Civil Liberties Union of Nevada v. City of Las Vegas*, 466 F.3d 784, 792 (9th Cir. 2006) (internal citations omitted).

Under the First Amendment free speech clause, "[a] regulation is content-based if either the underlying purpose of the regulation is to suppress particular ideas or if the regulation, by its very terms singles out particular content for differential treatment."

**ORDER - 9**

*Valle del Sol Inc., v. Whiting*, 709 F.3d 808 (9th Cir. 2013) (quoting *Berger v. City of Seattle*, 569 F.3d 1029,1051 (9th Cir. 2009).

Charitable solicitation by individuals is protected by the First Amendment. *See Vill. of Schaumburg v. Citizens for a Better Env't*, 44 U.S. 620, 632 (1980); *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 553 (4th Cir. 2013) ("the speech and expressive conduct that comprise begging merit First Amendment protection"). Because the ordinance restricts charitable solicitations in certain areas of the City, the Court finds the Plaintiffs have presented a colorable First Amendment challenge to ORD 34-13 and the burden shifts to the City to show that its speech restrictions comply with the First Amendment requirements.

The City maintains ORD 34-13 is content neutral and cites the Court to a Seventh Circuit case for guidance. *See Gresham v. Peterson*, 225 F.3d 899 (7th Cir. 2000). This Court is bound by Ninth Circuit law and finds the analysis in *Gresham* inconsistent with recent Ninth Circuit precedents. In examining the definition of solicitation used in ORD 34-13, the Court finds Plaintiffs are likely to succeed on the merits of their claim that the ordinance is not content neutral. The purpose of the ordinance is to suppress particular speech related to seeking charitable donations and treats this speech content different than other solicitation speech. The ordinance does not restrict solicitation of signatures for petition on a matter of public concern, political support solicitation, religious solicitation, etc in the same public areas. It only restricts solicitation speech for donations of money

or property. The City indicates the ordinance does not restrict the fundraising activities of organizations like the ACLU, but the wording of the ordinance does not limit its application to "who" is making the solicitation. The City also maintains the ordinance will not be enforced against street performers who solicit for money. This distinction between street performers is not explained in the ordinance to be an exception. Further, the City does not explain why a street performer on the city sidewalks asking for money is materially different that an individual asking for money. Both are soliciting for money. So *every* person who solicits for money or property in the public areas defined in the statute are potentially criminally liable based merely on the content of their speech. Yet other speech not associated with soliciting money or property towards a person standing in line on a sidewalk, waiting for bus, eating at an outdoor café, walking towards an ATM is allowed under the ordinance.

For purposes of this motion, the Court finds the City has not carried its burden in establishing the ordinance is content neutral. Even if the ordinance could be construed as content neutral, the Court finds the City has also failed to provide evidence that the ordinance is narrowly tailored to meet a significant governmental interest. While the aggressive solicitation prohibition is clearly related to public safety, the restrictions on non-aggressive solicitation do not appear to raise the same public safety governmental interest. Business owners and residents simply not liking panhandlers in acknowledged public areas does not rise to a significant governmental interest. While the ordinance

ORDER - 11

does leave open the ability to sit or stand passively in a very limited public area with a sign requesting money or property, this is not an ample alternative channel for communication of the information.

Having found portions of the ordinance to be content based, the City has failed to carry its burden for most of the regulation in providing evidence that there is a compelling governmental interest that can only be achieved by limiting solicitation speech in the manner set forth in the ordinance. The City must do more than identify interests, it must produce "tangible evidence that speech-restrictive regulations are necessary to advance the proffered interests. . . ." *Edwards v. City of Coeur d'Alene*, 262 F.3d 856, 863 (9th Cir. 2001). Further, under the strict scrutiny standard, the City has not carried its burden in establishing the restricted areas (which for example are many in the Downtown corridor) are the *least* restrictive means at achieving the governmental interest. The Court finds that Plaintiffs have established a likelihood of success on the merits on many of the sections of the ordinance. Specifically, as to Sections 1., B., 2-6 and 9-11, the Plaintiffs have established a likelihood of success on the merits.

However, the ordinance at issue contains a severability clause. Sec. 2. Therefore, the Court can uphold portions of the ordinance while granting an injunction on other portions of the ordinance. Because the Plaintiffs are not challenging the aggressive solicitation portion of the ordinance and the City has shown that definition in the regulation reasonably limits what can be determined to be aggressive solicitation, the

Court finds the City has met the requirements for a time, place and manner restriction on such behavior and speech. The aggressive solicitation prohibition in the ordinance appears likely to survive a constitutional challenge since it is related to the safety and protection of its citizens. The Court will therefore not enjoin enforcement of Sec. 1., B., 1 at this time.

In reviewing the other acts prohibited by the ordinance, the Court the finds the City has carried its burden at this stage that there is a substantial and compelling governmental interest in traffic safety and that restricting solicitation of donations where the solicitor has to step into the roadway or parkway to accept the donation in Sec. 1., B., 8 is likely to survive a constitutional challenge. "Promoting traffic safety is undeniably a substantial governmental interest." *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507-08 (1981). It is unlikely a municipality wants people soliciting for any purpose in a roadway. This creates a danger to the individual as well as to the operators of vehicles. It is not the nature of the speech that causes the violation of the ordinance but the physical location of the person who is soliciting that creates a prohibited act. Because it is possible for this portion of the ordinance to be interpreted as Constitutional, this portion of the ordinance will not be enjoined at this stage in the litigation.

The parties did not provide specific evidence or argument regarding the restriction of solicitations on public transportation such as a city bus. Unlike a city sidewalk, park, or plaza area it is much more difficult for a person to avoid unwanted solicitations while

ORDER - 13

riding public transportation.  Whether this difficulty to avoid the solicitation rises to an appropriate governmental interest or if another governmental interest is at issue with public transportation is a question for another day. Since neither party addressed whether or not public transportation meets the requirements for a "traditional public forum," and in an abundance of caution regarding not circumscribing an individual's First Amendment right without the City carrying its burden to restrict the same, the Court will enjoin the enforcement of this portion of the ordinance at this stage of the litigation.  The parties are directed to file further briefing on this issue with the Court.

      The same is true as to the ordinance's restriction of solicitation on private property, including private property open to the public, where the requisite signs are posted and/or notice is given to the solicitor. Sec. 1, B., 7. The Court is concerned that the ordinance is ambiguous as to what "private property open to the public" is and whether or not it is a traditional public forum. As such, the Court finds the City has not carried its burden at this stage as to the private property restriction for properties open to the public. For this reason, the Court will also enjoin this section of the ordinance, Sec. 1, B., 7, as it applies to private property open to the public. If the parties choose to do so, they may file further briefing on this section, with citations to authority, asking the Court to consider lifting the injunction. The Court will not, however, enjoin any restriction under the ordinance to the extent it applies to solicitations on private properties that are *not* open to the public. Such properties are clearly not public forums and the owners of non-public private property

may lawfully restrict solicitation upon their property.

### 3. Irreparable Harm

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "A chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." *Libertarian Party of Los Angeles County v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013). Because the enforcement of sections 1., B., 2-6 and 9-11 could have a chilling effect on the First Amendment rights of Plaintiffs and others, the Court finds Plaintiffs have established irreparable harm if the Court does not enjoin the enforcement of certain sections of ORD 34-13.

### 4. Balance of Equities

The Court finds the balance of equities tips in favor of Plaintiffs as the City has failed to carry its burden to set forth substantial or compelling interests it is achieving through the restrictions on freedom of speech.

### 5. Public Interest

The Constitution protects the rights of all citizens. Freedom of speech may be the

most important right to protect in order to maintain our republic. The Court is mindful that citizens asking or even begging other citizens for money can make the person being asked feel uncomfortable and imposed upon. But in public places, all citizens must tolerate speech they don't agree with, find to be a nuisance, insulting or outrageous. *See Scheneck v. Pro-Choice Network of Western New York*, 519 U.S. 357, 383 (1997). In *Berger*, the en banc Ninth Circuit panel found "it is unlikely the City's asserted interest in reducing obnoxious behavior" and "deterring harassment" could ever be compelling enough to survive First Amendment scrutiny. *Berger*, 569 F.3d at 1053, 1041.

Certainly, the First Amendment can lead to public inconvenience and annoyance, but such is a minor price to pay when the non-aggressive solicitations at issue can easily be ignored or avoided. The public's interest in restricting a person from asking for money in a non-aggressive manner does not outweigh a person's right to make a request for a charitable contribution.

## CONCLUSION

The Court finds Plaintiffs have standing to bring this facial and overbreadth challenge to ORD 34-13. The Court also finds Plaintiffs have satisfied the requirements for the issuance of a preliminary injunction on portions of ORD 34-13. The Court will enjoin the enforcement of certain portions of the ordinance to return to the status quo that was in effect prior to the effective date of the ordinance so that the merits of the legal issues can be addressed on their merits. The injunction on portions of the ordinance shall

remain in place pending a final resolution on the merits of this litigation or the Court revises its position based on further briefing submitted by the parties. The Court will also grant Plaintiffs request to waive the bond requirement of Fed. R. Civ. P. 65(c).

## ORDER

IT IS ORDERED:

1. Plaintiffs' Motion for Preliminary Injunction (Dkt. 4) is **GRANTED IN PART AND DENIED IN PART.** Consistent with this Memorandum Decision and Order, the City of Boise is **ENJOINED** from enforcing as "Prohibited Acts" Sections 1., B., 2 - 7, and 9-11 of City of Boise Ordinance NO. ORD-34-13. Plaintiffs are not required to post a security bond. The injunction shall remain in place until further order of this Court. The Court will calendar a scheduling conference to set additional briefing deadlines and a case management order in this case.

2. Plaintiffs' Renewed Request for Expedited Consideration (Dkt. 16) is **DENIED AS MOOT.**

DATED: **January 2, 2014**

Honorable Edward J. Lodge
U. S. District Judge